# United States Court of Appeals
### For the Eighth Circuit

_____

No. 13-1719

_____

United States of America

*Plaintiff - Appellee*

v.

Randy Frank Irlmeier

*Defendant - Appellant*

_____

No. 13-1822

_____

United States of America

*Plaintiff - Appellee*

v.

Paul Joseph Irlmeier

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Council Bluffs

_____

Submitted: December 18, 2013
Filed: April 28, 2014

_____

Before BYE, BRIGHT, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Randy and Paul Irlmeier each pleaded guilty to one count of conspiracy to manufacture at least 100 marijuana plants, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(vii). The district court[1] sentenced both defendants to 60 months' imprisonment—the mandatory minimum. The district court determined that their sentences warranted an aggravating role enhancement pursuant to U.S.S.G. § 3B1.1, which precluded them from obtaining safety-valve relief under 18 U.S.C. § 3553(f).

On appeal, the Irlmeiers aver that the district court erred in imposing the aggravating role enhancement to preclude safety-valve relief. They contend that the enhancement should not apply where the activities of their coconspirators were purely voluntary and done absent the Irlmeiers' directions or instructions. Furthermore, the Irlmeiers contend that they should not be viewed as having an elevated or aggravating role in the offense because their coconspirators' activities were so minimal. We affirm.

I. *Background*

In October 2010, the Iowa Division of Narcotics Enforcement and the Audubon County Sheriff's Department executed a search warrant at Randy Irlmeier's ("Randy") farm in Coon Rapids, Iowa. Officers discovered a marijuana-grow operation. Officers

_____

[1]The Honorable James E. Gritzner, Chief Judge of the United States District Court for the Southern District of Iowa.

found marijuana plants, an elaborate lighting and ventilation system, a calendar used to track the plants' growth, and tools and supplies used to cultivate the plants. Officers also found an outbuilding on the property that served as a drying room for the marijuana. In total, authorities seized almost 13 kilograms of marijuana from Randy's farm.

When interviewed, Randy identified his nephew, Paul Irlmeier ("Paul"), as someone who assisted him with the marijuana-grow operation. Thus, officers obtained a search warrant for Paul's farm in Audubon, Iowa, later that same day. Officers found over 116 grams of marijuana on the property.

Randy and Paul were charged with (1) conspiracy to manufacture at least 1,000 marijuana plants, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A)(vii); (2) conspiracy to distribute at least 100 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(vii); and (3) manufacturing at least 50 marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), as well as 18 U.S.C. § 2. Both Randy and Paul pleaded guilty to conspiracy to manufacture at least 100 marijuana plants, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B)(vii). The statutory mandatory minimum for this offense is 60 months' imprisonment. *See* 21 U.S.C. § 841(b)(1)(B). The government dropped the remaining counts.

Both of their presentence reports (PSRs) recommended a total offense level of 23 and a criminal history category of I. Included in the calculation of each offense level was a four-level enhancement under U.S.S.G. § 3B1.1(a) for being an organizer or leader of criminal activity. Most importantly, this enhancement precluded both defendants from receiving statutory safety-valve relief. As a result, the PSRs calculated their Guidelines ranges to be 46–57 months. Because the mandatory minimum is 60 months, the Guidelines recommendation became 60 months. *See* U.S.S.G. § 5G1.1(b).

Randy and Paul objected to the PSRs' determination that they were leaders or organizers of this criminal activity. Randy contended that the role "enhancement [was] inapplicable and entirely unsupported by the facts of this case. Randy Irlmeier never directed or recruited anyone as an accomplice or co-conspirator." Paul argued that he never directed anyone to water marijuana plants. He asserted more generally that there existed no "factual basis for a finding of a role enhancement."

The district court conducted a two-day,[2] joint sentencing hearing. The government presented seven witnesses to support the PSRs' application of the aggravating role enhancement. After receiving these testimonies, the district court concluded:

> Having considered all of the evidence and the issue of whether or not an enhancement under 3B1.1 of the guidelines applies, the court recognizes that the amount of that enhancement is somewhat immaterial—well, it's not somewhat immaterial; it's completely immaterial, frankly, to the situation of this case because if the court finds there's an enhancement, it means that safety valves aren't going to apply.
>
> And so while it seems to me that based upon a preponderance of the evidence and the state of the law—I certainly understand the arguments counsel have been making. It seems to me that they are policy arguments that are somewhat beyond this court's responsibility to apply the law as I understand it based upon the facts that I have and judging those facts at a level of the preponderance of the evidence. I believe that a role enhancement at some level is supported by the record in this case. I think it is more likely a three-level, rather than a four-level enhancement; but as indicated that really doesn't become material under the circumstances of this case.

_____

[2]Severe weather delayed the second day of the hearing until approximately one month later.

The court finds that the enhancement does apply. That means under the circumstances . . . this case would present for both defendants at an offense level 23, with a criminal history category of I. That generates a guideline range of 46 to 57 months, but in the absence of relief from the mandatory minimum, both defendants are looking at a mandatory minimum of 60 months, which becomes the guideline range.

The district court then sentenced both defendants to the mandatory minimum of 60 months' imprisonment.

## II. *Discussion*

On appeal, both Randy and Paul dispute the district court's application of the aggravating role enhancement. "The district court's factual findings, including its determination of a defendant's role in the offense, are reviewed for clear error, while its application of the guidelines to the facts is reviewed de novo." *United States v. Gaines*, 639 F.3d 423, 427–28 (8th Cir. 2011) (quotations and citations omitted). Therefore, to reverse the district court, we must have a "definite and firm conviction" that the district court erred. *United States v. Moreno*, 679 F.3d 1003, 1004 (8th Cir. 2012) (per curiam) (quotation and citations omitted). "If the district court chose a permissible view of the evidence, its holding is not clearly erroneous." *Id.* (citation omitted).

According to 18 U.S.C. § 3553(f), a defendant may be eligible for a "safety valve." The so-called safety valve allows the district court to avoid imposing a mandatory minimum sentence. 18 U.S.C. § 3553(f). The safety valve, if applicable, would benefit defendants like Randy and Paul who were convicted of a crime under 21 U.S.C. §§ 841 and 846. *Id.* The statute enumerates five other eligibility requirements. *Id.* The only eligibility requirement at issue in this case is whether "the defendant was [ ] an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines." 18 U.S.C. § 3553(f)(4).

-5-

The Sentencing Guidelines elaborate on who constitutes an organizer, leader, manager, or supervisor by providing for an aggravating role enhancement. The Guidelines state:

> (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.
>
> (b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.
>
> (c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1. As the district court noted, the precise level of enhancement is immaterial here. The relevant inquiry is whether the defendants qualify under *any* of these subsections such that they are an organizer, leader, manager, or supervisor and thus ineligible for safety-valve relief. The Guidelines further explain:

> To qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of *one or more* other participants. An upward departure may be warranted, however, in the case of a defendant who did not organize, lead, manage, or supervise another participant, but who nevertheless exercised management responsibility over the property, assets, or activities of a criminal organization.

U.S.S.G. § 3B1.1 cmt. n.2 (emphasis added). We have construed this application note to require that the defendant organize or lead only one participant to trigger the enhancement and thus preclude safety-valve relief. *See United States v. McMullen*, 86 F.3d 135, 138 (8th Cir. 1996).

The Guidelines also note:

> In distinguishing a leadership and organizational role from one of mere management or supervision, titles such as "kingpin" or "boss" are not controlling. Factors the court should consider include the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others. There can, of course, be more than one person who qualifies as a leader or organizer of a criminal association or conspiracy. This adjustment does not apply to a defendant who merely suggests committing the offense.

U.S.S.G. § 3B1.1 cmt. n.4. Although the purpose of comment note four is to help distinguish between leadership and management roles, we have considered the comment note instructive in determining whether a defendant qualifies for the safety valve. *See United States v. Gamboa*, 701 F.3d 265, 267 (8th Cir. 2012).

The government must demonstrate by a preponderance of the evidence that the defendants warrant the enhancement. *Id.* "Merely distributing or selling drugs is not sufficient for the enhancement." *Id.* (quotation, alteration, and citation omitted). Nonetheless, we define "organizer" and "leader" broadly and "manager" and "supervisor" quite liberally. *United States v. Lopez*, 431 F.3d 313, 317–18 (8th Cir. 2005) (citations omitted). In fact, defendants are subject to this enhancement even where they manage or supervise only one other participant in the conspiracy. *Id.* at 318; *McMullen*, 86 F.3d at 138. Furthermore, the enhancement "may apply even if the management activity was limited to a single transaction." *Lopez*, 431 F.3d at 318 (quotation and citations omitted). The "defendant[s] must direct or enlist the aid of others." *Id.* (quotation and citation omitted); *see also United States v. Rowley*, 975

F.2d 1357, 1364 n.7 ("[W]e have always required evidence that the defendant directed or procured the aid of underlings." (citations omitted)).

Additionally, "[w]e have never construed the terms . . . so narrowly as to restrict application of the enhancement solely to the organizer who first instigated the criminal activity." *United States v. Noe*, 411 F.3d 878, 889 (8th Cir. 2005) (quotation and citation omitted). In fact, the defendant need not be the only leader or organizer, and the defendant need not lead or organize all of the participants. *Id.* Finally, we have previously rejected a defendant's contention that others helped him in furtherance of the conspiracy sua sponte and without coordination where it was clear that the defendant was the "driving force" behind the crime. *United States v. Rodgers*, 122 F.3d 1129, 1133–34 (8th Cir. 1997).

The key factors in this analysis are control and organization. *Rowley*, 975 F.2d at 1364. However, the enhancement may apply despite the record being scant on the degree of control and decision-making authority, for these are merely two factors that we consider. *Gaines*, 639 F.3d at 428. In fact, "a defendant's control over another participant is sufficient but not necessary for a § 3B1.1(b) enhancement." *Moreno*, 679 F.3d at 1005 (citation omitted).

### A. *Paul Irlmeier*

Paul contends that "[w]hile the definition of organizer or leader may be broad, there must also be a point where the action taken [by coconspirators] is so insignificant that it does not constitute control over the person" such that a defendant cannot be considered a leader or organizer. However, our review of the record confirms that Paul qualifies for the U.S.S.G. § 3B1.1 enhancement so as to preclude safety-valve relief. First, the government presented testimony from Paul's ex-wife, Traci Irlmeier ("Traci"). Traci explained how Paul directed or ordered her to water marijuana plants. Traci also watched their children while Paul harvested marijuana; bought products like Ziploc bags, potting soil, and a food saver machine; watered

Randy's marijuana plants; and transplanted marijuana plants, all at Paul's request and in furtherance of the conspiracy. Paul recruited Traci and directed her activities in the conspiracy. The district court did not err in determining that he was at least a supervisor of the operation. *See* U.S.S.G. § 3B1.1 cmt. n.4. One transaction or occurrence is sufficient to qualify for the enhancement. *See Lopez*, 431 F.3d at 318. Paul's conduct toward Traci is sufficient for Paul to qualify for the enhancement.

In addition, the government also demonstrated that Paul asked Johann Vesper, one of Paul's farmhands, to transport water to a field so that marijuana plants could be watered. Paul also directed David Andreasen, one of Paul's customers, to water, harvest, and process the marijuana crop in exchange for compensation. Paul further asked for and received the assistance of Chris Hulsing, another farmhand, in cutting and transporting marijuana. Paul's degree of control therefore exceeds that in *Lopez* where the defendant simply asked his roommate to serve as a lookout on one occasion or in *Erhart* where the defendant merely recruited people to join the conspiracy. *See Lopez*, 431 F.3d at 318; *United States v. Erhart*, 415 F.3d 965, 973 (8th Cir. 2005). Based on Paul's recruitment of these four individuals and his directions to them, the district court did not clearly err in applying the enhancement. Paul was therefore ineligible for the safety valve.

B. *Randy Irlmeier*

In arguing against the enhancement, Randy avers that "the activity of any of the coconspirators was done voluntarily, without direction, instruction, or influence" such that the district court should not have applied the aggravating role enhancement. Randy references an occasion where Randy's girlfriend, Janice Wolfe, and her sister, Linda Southwell, traveled from their homes in South Carolina to visit Randy at his Iowa farm. During the visit, Wolfe and Southwell assisted Randy in cutting marijuana plants on one occasion. Wolfe testified that she cut the plants by voluntarily imitating Randy, for he never solicited her help in cutting the plants or instructed her how to cut them. Southwell testified that she did not remember receiving any invitation or

instructions from Randy regarding the marijuana cutting. One of Randy's customers, Gene Weitl, also participated in this marijuana-cutting soiree, but he could not remember receiving any invitation or instructions from Randy. The district court apparently accepted these testimonies as true, stating:

> This case does present some wrinkles that are different than what the court frequently looks at with regard to aggravated role in an offense, in terms of relatively small levels of participation, and also because in some situations the participation appears to have been voluntary, although to the extent that there was direction, particularly with the volunteers, the direction was by the volunteers observing what the defendants were doing and then copying that and providing some participation and some assistance to the process, and because of all of those factors, this case does present somewhat differently.

Thus, Randy questions whether the aggravating role enhancement applies where the coconspirators participated voluntarily and without his direction or instruction.

We need not answer this question because other facts demonstrate that Randy qualifies for the aggravating role enhancement. First, Traci testified that Paul watered Randy's marijuana plants occasionally while Randy was out of town because watering was part of Paul's "responsibility" to Randy. One can reasonably infer that Paul was responsible for this activity because of Randy's instruction. Additionally, Weitl testified that Randy asked him to retrieve a bag of marijuana from another building and deliver it to Randy, which Weitl did. Weitl also testified that he helped drill holes in the field for Randy so that Randy could plant marijuana. Randy's actions seem comparably more supervisory than the defendant in *Lopez* who merely asked his roommate to serve as a lookout on one occasion. *See* 431 F.3d at 318. Although not overwhelming, the evidence reflecting Randy's supervisory authority is sufficient. *See Gaines*, 639 F.3d at 428. Randy's arguments to the contrary reflect "a statement of

-10-

disagreement with the circuit's precedent applying the enhancement in certain factual scenarios. As a three judge panel, we are similarly bound by circuit precedent." *Id.*

Consequently, the district court did not err in determining that Randy qualified for the enhancement.

### III. *Conclusion*

For these reasons, we affirm the judgment of the district court.

BRIGHT, Circuit Judge, dissenting.

I concur with the majority's decision affirming the sentence of Paul Irlmeier but I respectfully dissent as to Randy Irlmeier's sentence.

The district court erred in imposing an aggravating role enhancement for Randy Irlmeier because the record lacks evidence that Randy Irlmeier served as an organizer, leader, manager, or supervisor. *See* United States Sentencing Guidelines Manual (U.S.S.G.) § 3B1.1. This court broadly construes the terms "organizer," "leader," "manager," and "supervisor" under U.S.S.G. § 3B1.1. *United States v. De Oliveira*, 623 F.3d 593, 599 (8th Cir. 2010). However, simply "[b]eing a part of a conspiracy does not imply that one is an organizer, leader, manager, or supervisor in the criminal activity." *United States v. Rowley*, 975 F.2d 1357, 1364 (8th Cir. 1992). "The key determinants of section 3B1.1 are control and organization." *Id.* "[W]e have always required evidence that the defendant directed or procured the aid of underlings." *Id.* at 1364 n.7. Therefore, at the very least, "a defendant must direct or enlist the aid of" one other person. *United States v. Lopez*, 431 F.3d 313, 318 (8th Cir. 2005) (citation omitted) (internal quotation marks omitted); *see also United States v. Zimmer*, 299 F.3d 710, 724 (8th Cir. 2002) ("A manager or supervisor need only have managed or supervised one other participant in the criminal conspiracy.").

Here, the evidence showed voluntary actions taken by Randy Irlmeier's alleged coconspirators without any significant direction or instruction from Randy Irlmeier. The absence of any significant direction from Randy Irlmeier distinguishes this case from *Lopez*, where the defendant specifically asked his roommate to serve as a lookout during a drug deal. *See Lopez*, 431 F.3d at 318. In contrast, the testimony in this case revealed that Randy Irlmeier did not have to ask for assistance. For example, Gene Weitl admitted to helping snip and clean marijuana with Randy Irlmeier on more than one occasion, but he testified that Randy Irlmeier did not direct him to do so. He simply helped out because he was "just being a friend." While Weitl testified that on one occasion, as Weitl got up to leave, Randy Irlmeier asked him to retrieve a bag containing marijuana from a shed and deliver it to him in the basement. But, as a practical matter, such a limited request without more does not transform Randy Irlmeier into an organizer, leader, manager, or supervisor.

Caselaw regarding the sentencing enhancement as an organizer, leader, manager, or supervisor under U.S.S.G. § 3B1.1, requires a certain threshold of direction by the defendant. Randy Irlmeier's request to Weitl is insufficient to show the requisite direction needed to apply the enhancement. Therefore, the district court erred in imposing an aggravating role enhancement for Randy Irlmeier. Without such an enhancement, he would have been eligible for safety-valve relief from the 60-month (five-year) mandatory minimum sentence and would have faced a guidelines range of 46 to 57 months or even a lesser penalty at the district court's discretion.

I add an observation. In today's world where several states in this country have legalized marijuana use for medical purposes and two states have even legalized its recreational use, a hard look should apply to marijuana prosecutions carrying mandatory minimum sentences as in this case. United States Attorney General Eric H. Holder, Jr. has concluded that a new approach must be taken in federal sentencing and that we must ensure that our criminal justice system is "[t]argeting the most serious offenses" and "prosecuting the most dangerous criminals." Eric Holder,

Attorney General of the United States, United States Department of Justice, Remarks at the Annual Meeting of the American Bar Association's House of Delegates (Aug. 12, 2013), *available at* http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html; *see also United States v. Scott*, 732 F.3d 910, 919 (8th Cir. 2013) (Bright, J., dissenting); *United States v. Markert*, 732 F.3d 920, 935 n.6 (8th Cir. 2013) (Bright, J., dissenting). Randy Irlmeier's conduct is not a "most serious" offense nor is he a "most dangerous" criminal. A five-year mandatory minimum sentence for his crime is far too long. I would remand to the district court to apply the safety valve and resentence Randy Irlmeier accordingly.

———————————————